IDUS P. ASH and GEORGIA L. ASH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent M. RALPH CANNON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ash v. Commissioner
Docket Nos. 360-71, 6102-71.
United States Tax Court
T.C. Memo 1974-219; 1974 Tax Ct. Memo LEXIS 100; 33 T.C.M. (CCH) 974; T.C.M. (RIA) 74219; August 26, 1974, Filed. *100 Peter Winstead, for petitioners in docket No. 360-71. Lester L. May, for petitioner in docket No. 6102-71. W. John Howard, Jr., for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: Respondent determined deficiencies in the petitioners' Federal income tax as follows: Docket No.
Petitioner
Taxable Year
Amount 360-71
Idus P. Ash and Georgia L. Ash
1967
$27,305.86
6102-71
M. Ralph Cannon
1967
36,993.48
The cases were consolidated for trial and opinion. The sole issue is the amount of income not reported by one or both of petitioners. Respondent is in the position of a stakeholder by his determination of identical deficiencies against petitioners. FINDINGS OF FACT Some of the facts have been stipulated. The stipulations of facts and exhibits are incorporated by reference. Petitioners Idus P. Ash (hereinafter referred to as Ash) and Georgia L. Ash resided in Irving, Texas, when they filed their petition. Their joint Federal income tax return for the taxable year 1967 was filed with the district director of internal revenue at Dallas, Texas. Petitioner M. Ralph Cannon resided in Dallas, *101 Texas, when he filed his petition. His Federal income tax return for the taxable year 1967 was filed with the district director of internal revenue at Dallas, Texas. During the taxable year, Cannon operated a variety store and bakery shop and participated in real estate transactions. On his return for the taxable year 1967, Cannon reported as miscellaneous wagering income the sum of $15,040 computed on cash deposits to his bank account as follows: Detail
Date of Deposit
Amount Cash deposit
2/24/67
$ 1,000.00
Cash deposit
4/28/67
1,500.00
Cash deposit
5/1/67
500.00
Cash deposit
6/21/67
1,000.00
Cash deposit
7/26/67
3,000.00
Cash deposit
10/13/67
500.00
Cash deposit
10/17/67
500.00
Cash deposit
10/25/67
500.00
Cash deposit
11/21/67
1,000.00
Cash deposit
11/22/67
1,000.00
TOTAL CASH DEPOSITS
$10,500.00
CASH NOT DEPOSITED
4,540.00
TOTAL
$15,040.00
Ash was in the general contracting business and reported no wagering income on the income tax return he filed with his wife. During the taxable year 1967, Ash received Western Union money orders from Joe H. Hodges totaling $64,680. The funds transmitted by money orders *102 had been embezzled and swindled by Hodges from Meyerland State Bank in Houston, Texas. The money orders were as follows: Date of Money Order
Amount
Details 10/5/67
$ 3,700.00
Delivered to IDUS P. ASH, 1003 So. Highschool Lane, Irving, Texas, and cashed at Irving Bank and Trust Company, Irving, Texas, on 10/9/67
10/21/67
6,600.00
Draft signed for by IDUS P. ASH. Cashed at Irving Bank and Trust Company, Irving, Texas, 10/23/67
10/28/67
$12,300.00
Paid in cash by Western Union, Dallas, Texas. Draft endorsed by IDUS P. ASH. Notation on draft: "Known customer - RW - Sex M."
11/10/67
13,200.00
Paid in cash by First National Bank in Dallas, Texas. Draft endorsed by IDUS P. ASH.
11/18/67
12,680.00
Draft endorsed IDUS P. ASH and paid in cash by Western Union, 10:43 a.m., 11/20/67.
11/21/67
16,200.00
Paid in cash by Western Union. Receipt signed by IDUS P. ASH.
Hodges wired the money to Ash on Fridays so that bets might be placed in Dallas on college and professional football games to be played on the upcoming weekend. Ash required that the cash be sent to Dallas before he would place the bets. After allowing time for Ash to receive the funds, Hodges *103 would telephone him and obtain the "point spreads" on the various games. After deciding upon his bets, Hodges would telephone Ash again and place his bets. Ash would bet a portion of Hodges' money with Cannon. Since it was Hodges' understanding that Ash was to "lay the bet off" with a bookmaker, Hodges would call Ash a third time and obtain confirmation that the bet had been placed by Ash. Hodges never bet directly with Cannon. The money wired to Ash was not intended by Hodges to be applied toward past gambling debts owed Ash or for bets on future weekends. During the taxable year 1967, Hodges owed no gambling debts to Ash. There was no agreement between Hodges and Ash as to a fee or commission for placing the bets. Hodges would, however, occasionally give Ash a portion of his winnings. Ash was introduced to Cannon in 1966 when Ash was seeking a horse racing bookmaker. Ash began to gamble with him and the two men spent time together gambling in Hot Springs, Arkansas, and Ruidoso, New Mexico. In 1966, Ash attempted to persuade Cannon to purchase real estate with him in Dallas but Cannon declined. When Cannon and another purchased a tract of land near the land Ash offered, *104 Cannon borrowed $10,000 from Ash and provided Ash with collateral in an equal amount to make it appear to his estranged wife that he was in poor financial condition.The loan was never repaid. Pursuant to his arrangement with Cannon, Ash was paid a 10 percent commission of the net winnings from bets which he placed with Cannon. The commissions were not paid directly to Ash but were deducted by Ash from amounts he paid over to Cannon. Ash placed bets with Cannon for himself and for others besides Hodges. Ash never identified Cannon to Hodges as the bookmaker with whom he placed Hodges' bets. Hodges assumed that Cannon was the bookmaker but he had no knowledge of the amount which Ash bet with Cannon. It was Hodges' intention and understanding that Ash was to bet the money for him and that none of the money was to be retained by Ash as compensation. On one occasion in 1966 or 1967, Hodges accompanied Ash to Cannon's variety store while Hodges' money was delivered to Cannon but Hodges remained in the automobile as Ash delivered the money to Cannon in the store. On another occasion, Hodges was present in Ash's kitchen when Ash called to place Hodges' bet with a person whom Hodges *105 thought to be Cannon. Hodges communicated directly with Cannon on only two occasions. In October or November 1967, Hodges contacted Cannon by telephone and informed him that the money which Ash was losing had been stolen from a bank and the money had to be returned or innocent people would be hurt. Hodges requested that Cannon give him the sum of $5,000 and indicated to Cannon that this would solve his difficulties with the bank. Being willing to give Hodges "anything" to prevent embarrassment to his mother and daughter, Cannon gave Hodges the requested amount in cash in December 1967 at a motel near the Dallas airport and received the following statement from Hodges: To Whom It May Concern: This letter is an admission that I have today received from Ralph Cannon the sum of $5,000 in cash. I have accepted this money in return for a promise not to cause him any unfavorable publicity of any kind, either spoken or written, which might embarrass or humiliate him or his mother and daughter in any way. Signed, /s/ Joe H. Hodges During the 1967 football season, Hodges sustained losses of approximately $200,000 as a result of his gambling transactions with Ash. Over the *106 two years, 1966 and 1967, he sustained losses of approximately $400,000 as a result of his gambling transactions with Ash. On two occasions during 1967, Hodges took Ash to Las Vegas with him. In addition to buying Ash's airplane ticket, Hodges gave Ash money with which to bet. Neither Ash nor Cannon retained any books or records of the cash received or paid out in connection with their gambling activities. Cannon's net winnings from gambling were kept in a shoe box and periodically deposited in his bank account. The $5,000 given to Hodges by Cannon was taken from the shoe box and was not reported as income on Hodges' 1967 Federal income tax return. Cannon did not file a Federal excise tax return for wagering income for the taxable year 1967. He did not possess a Federal wagering tax stamp during that year. In notices of deficiency mailed to petitioners, the Commissioner determined that petitioners Ash and Cannon each failed to report on their Federal income tax returns for 1967 the amount of $64,680 as gambling income. OPINION The sole issue is the amount of unreported gambling income received by Ash and/or Cannon during 1967. There is no dispute that Hodges wired $64,680 *107 to Ash in 1967 for wagering. To the extent that Ash transferred the funds to Cannon, the income is not taxable to Ash. The record in this case is unsatisfactory. Neither Ash nor Cannon had records to prove the amounts of cash they handled. The testimony of each was vague, unconvincing and entitled to little weight. The testimony of other witnesses lent little support to the contentions of either Ash or Cannon. The activities of both Ash and Cannon were illegal and the money that changed hands was embezzled from a bank. The $5,000 paid from Cannon to Hodges resembles "hush money." Given such a record, we conclude that both parties failed to prove how much income they earned as a result of their illegal gambling activities with Hodges' ill-gotten gains. Respondent admits an inconsistent position and acts as a stakeholder. It would, therefore, seem inappropriate to tax both Ash and Cannon on the entire $64,680. Accordingly, we hold that Ash and Cannon each earned one-half of the total sent from Hodges to Ash, or $32,340.
Decisions will be entered in docket Nos. 360-71 and 6102-71 under Rule 155.